UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　v.<br><br>RASHEED MULLINS,<br><br>　　*Defendant*. | Criminal Action No. 24-cr-193-2 (CJN) |

**ORDER**

　　For allegedly participating in a drive-by shooting, Defendants Alonzo Lover, Rasheed Mullins, and Josiah Warfield face an assortment of criminal charges, including Unlawful Possession of a Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1) and Assault with Intent to Kill While Armed and Aiding and Abetting in violation of D.C. Code §§ 22-401, 22-4502, and 22-1805.  ECF No. 5.  Mullins allegedly served as the driver and has been charged only with Assault with Intent to Kill While Armed and Aiding and Abetting.  *Id*.  The Government now moves to revoke an order permitting Mullins's pretrial release, *see* May 6, 2024, Minute Order, on the ground that there are no conditions of release that can assure the safety of the community if Mullins were released, ECF No. 22 ("Mot.") at 1–2.  The Court agrees, grants the Motion, and orders Mullins detained pending trial.

　　Under 18 U.S.C. § 3142(e), this Court must order Mullins detained pending trial if it determines that "no condition or combination of [release] conditions will reasonably assure . . . the safety of any other person and the community."  The Government bears the burden to make this showing by clear and convincing evidence, *United States v. Simpkins*, 826 F.2d 94, 94, 96 (D.C. Cir. 1987), which it may satisfy by way of a proffer, *see United States v. Smith*, 79 F.3d 1208, 1209–10 (D.C. Cir. 1996) (per curiam).  The Court analyzes this question de novo, *United States*

1

*v. Blackson*, No. 23-cr-25 (BAH), 2023 WL 1778194, at *5 & n.2 (D.D.C. Feb. 6, 2023) (collecting cases), using the factors identified in 18 U.S.C. § 3142(g).  Here, each factor weighs in favor of detention.

Nature and Circumstances of the Offense Charged.  Mullins has been charged with an extraordinarily serious offense.  According to the Government's proffer, Mullins served as the driver for a drive-by shooting in which Lover and Warfield shot at the intended victim using pistols and an AK-47-style rifle with large-capacity magazines.  Mot. at 2–6, 9–10, 15–20; *see also* 18 U.S.C. § 3142(g)(1) (the Court must consider whether the offense involves a "firearm" and qualifies as a "crime of violence").  CCTV footage captures the shooting:



*Id*. Fig. 1.  This attack easily could have killed that person.  In fact, the intended victim's vehicle was hit by four bullets, *see id*. at 3, including one that destroyed the front passenger seat headrest, *id*. at 16–17 & Fig. 18.  If there had been a passenger in that seat or that bullet had been two feet to the left, this would likely be a murder case.

Making matters worse, the attack also jeopardized the safety of innocent bystanders.  Another driver was in the line of fire when the shooting started.  *See* Mot. at 19.  The assault took place in broad daylight within 500 feet of an elementary school.  *Id*. at 17–18.  (Indeed, a small

child had crossed the street where the shooting took place *less than thirty seconds* before the assault began. *Id*. at 18.) And Mullins drove the vehicle involved in the shooting with appalling recklessness—accelerating away from the scene of the crime at a high rate of speed, losing control when trying to make a turn, and ultimately crashing the vehicle. *Id*. at 4. Mullins himself therefore directly contributed to the dangerousness of the offense even beyond enabling the attack.

The Weight of the Evidence Against the Person. Based on the Government's proffer, the evidence weighs strongly in favor of a conviction. Mullins crashed the vehicle in front of two police detectives, who saw the vehicle's three occupants flee into the woods. Mot. at 4–5, 20. The officers then pursued the vehicle's occupants and detained Mullins and his codefendants approximately five minutes after the crash. *Id*. at 5–6, 8, 20. One of the officers then positively identified Mullins as the driver of the vehicle. *Id*. at 8, 20. In addition, the Government has obtained evidence that strongly corroborates the charges against Mullins's codefendants (and, in turn, tends to show that he aided and abetted an extraordinarily serious crime). A CCTV captured the moment of the assault, documenting the weapons used during the attack and the clothing worn by the shooters. *Id*. at. 2–3. Weapons and clothing consistent with that footage were then found in the defendants' possession when they were arrested or their flight path from the crash scene. *Id*. at 6–13. Officers also positively identified Mullins's codefendants as the other two men who ran from the vehicle. *Id*. at 6–8.

The History and Characteristics of the Person. Mullins's history and characteristics suggest that he poses a danger to the community because he is unlikely to abide by his release conditions. *See United States v. Munchel*, 991 F.3d 1273, 1280–81 (D.C. Cir. 2021). Most importantly, at the time of the offense, Mullins was on pretrial release in another criminal matter. Mot. at 21. (Specifically, he was facing trial in D.C. Superior Court for illegally possessing a pistol with an

3

obliterated serial number and machine gun conversion device. *Id.*) Even so, he decided to escalate his participation in criminal activity by assisting an unusually reckless drive-by shooting—a clear indication that he would pose a threat to the safety of the community if he were released pending trial. *See* 18 U.S.C. § 3142(g)(3)(B) (the Court must consider "whether, at the time of the current offense or arrest, the person was on . . . release pending trial . . . for an offense under Federal, State, or local law"). And he did so less than two months before he was scheduled to go to trial in his D.C. Superior Court case. *See* Mot. at 1–2. At a minimum, Mullins's recent and brazen criminal conduct raises serious doubts that he would comply with conditions of release here.

Mullins argues that he could be trusted to comply with his release conditions due to his positive conduct during the approximately three weeks after the shooting in which he was not detained. ECF No. 26 ("Opp.") at 4.[1] Specifically, he says that he complied with his D.C. Superior Court release conditions and notes that he has not been accused of threatening or attacking the victim again. *See id.* It is true that the Government has not shown that Mullins committed any *additional* crimes between his two arrests in this matter. But his (alleged) lawfulness during that brief period pales in comparison to the serious violent felony that he appears to have committed. Attempting to kill another person, of course, presumably violated his conditions of release in the D.C. Superior Court case.

<u>The Nature and Seriousness of the Danger</u>. Mullins poses an ongoing and serious threat to the safety of his community. In the last year alone, Mullins participated in an attempt to kill another person and possessed a dangerous firearm. He has also shown recklessness, impulsivity,

---

[1] Although Mullins was arrested immediately after the shooting, a D.C. Superior Court Judge dismissed the case against him and ordered him released. Mot. at 11. He was then indicted by a federal grand jury and rearrested. *See* ECF No. 5; Opp. at 4.

4

and poor judgment by committing the former offense while on pretrial release and in the way that he drove the vehicle when he attempted to flee from the scene of the crime.

<u>Alternative Conditions of Release</u>.  The Court also considers the conditions of release that Mullins proposes—home detention, GPS monitoring, and supervision by two third-party custodians, *see* Opp. at 5—and concludes that they would not be enough to "reasonably assure . . . the safety of . . . the community," 18 U.S.C. § 3142(e)(1).  As noted above, Mullins's history and characteristics show that he cannot be trusted to willingly comply with his conditions of pretrial release.  Further, GPS monitoring cannot reasonably prevent Mullins from committing other serious crimes for a variety of reasons.  Finally, the third-party custodians he proposes are his sister and brother-in-law.  Opp. at 5.  But Mullins was living with those proposed custodians at the time he committed both offenses for which he currently faces trial, *id*. at 24, including while he was on pretrial release in the D.C. Superior Court action discussed above.  In these circumstances, the Court is unwilling to assume that these proposed custodians will *now* take steps to ensure Mullins's compliance with the terms of his pretrial release.  Moreover, his brother-in-law would essentially be the primary custodian and has a criminal record for domestic violence and firearms possession.  Mot. at 24–25.

* * *

For the foregoing reasons, the Court finds that the Government has met its burden to show by clear and convincing evidence that "no condition or combination of [release] conditions will reasonably assure . . . the safety of the community" if Mullins were released pending trial.  18 U.S.C. § 3142(e).

Accordingly, it is hereby

**ORDERED** that the Government's Motion to Revoke the Order of Release, ECF No. 22, is **GRANTED**; and it is further

**ORDERED** that Defendant Rasheed Mullins shall be detained pending trial.

DATE:  May 31, 2024

_____
CARL J. NICHOLS
United States District Judge